IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DON RICO SCOTT, #280851 *
Plaintiff,
v. * CIVIL ACTION NO. AW-05-2060

DR. ENIOLA, M.D. *
Defendant.
***

**MEMORANDUM**

I. *Background*

On July 27, 2005, this Court received for filing Plaintiff's 42 U.S.C. § 1983 civil rights complaint for injunctive relief and compensatory damages. Plaintiff claims that since his transfer to the Eastern Correctional Institution ("ECI") in 2003, Dr. Eniola has refused to provide him medical testing and treatment for multiple sclerosis ("MS") although a neurologist at the University of Maryland Medical System ("UMMS") indicated a possible MS diagnosis and recommended further testing.[1] Paper No. 1.

On January 23, 2006, the Court denied without prejudice Defendant Eniola's Motions to Dismiss or, in the Alternative, Motions for Summary Judgment.[2] Paper No. 18. Defendant was ordered to file a status report updating Plaintiff's treatment within 120 days. Defendant has since filed Answers, Renewed Motions for Summary Judgment, and a Status Report. Paper Nos. 20-23. Plaintiff has filed an opposition. Paper No. 25. A hearing is not needed to resolve the constitutional

[1] Plaintiff states that: (i) he sleeps with ongoing pain; (ii) he uses a wheelchair due to weakness in his legs; (iii) he has difficulty talking; and (iv) he is housed in the special needs unit of the ECI infirmary.

[2] Defendant's original exhibits covered Plaintiff's medical care up to September of 2005. The Court's decision was based on additional information provided in Plaintiff's opposition which indicated that he had received further neurological evaluation at UMMS and modified physician's orders in either October or November of 2005.

issues presented in the matter. *See* Local Rule 105.6. (D. Md. 2004). For reasons which follow, the Court shall grant Defendant's Motions.

II. *Standard of Review*

*Motion for Summary Judgment*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In alleging that he was denied his Eighth Amendment right to necessary medical care Plaintiff must prove two essential elements. First, he must satisfy the “objective” component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Plaintiff has satisfied this element. The Court must then examine whether he has proven the second “subjective” component of the Eighth Amendment standard by showing deliberate indifference on the part of Dr. Eniola. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails

something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Healthcare staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

"[A]ny negligence or malpractice on the part of ....doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones* 145 F. 3d at 166. Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

III. *Analysis*

Defendant argues through the presentation of medical records that Plaintiff received constitutionally adequate medical care and claims that Plaintiff received numerous consultations and diagnostic tests to determine the cause of his unsteady gait. According to Defendant's materials, in June of 2001, Plaintiff underwent a magnetic resonance imaging ("MRI") study at Washington County Hospital ("WCH") while confined at the Maryland Correctional Institution in Hagerstown. Paper No. 11, Ex. A. The study resulted in a differential diagnosis including viral encephalopathy and acute disseminated encephalomyelitis ("ADEM").[3] Paper No. 11, Ex. A. Dr. Eniola speculates

---

[3] Encephalopathy is defined as any disorder of the brain. Encephalomyelitis is defined as an inflammation of the brain and spinal cord. *See* Stedman's Medical Dictionary, P. 565-566, 26th Ed. 1995.

that ADEM, usually caused by an infection, may have occurred as a result of past gunshot wounds to Plaintiff's head, neck, and femur. Paper No. 11, Ex. A.

Records show that on November 21, 2001, Plaintiff underwent a neurology consult at the University of Maryland Medical System ("UMMS"). Paper No. 11, Exs. A & B. The neurologist noted that Plaintiff had been given intravenous steroids without much improvement.[4] *Id*. The UMMS neurologist recommended another MRI study, which was conducted on January 9, 2002. *Id*., Exs. A & B. The results of that MRI were unchanged from the previous June, 2001 MRI. *Id*.

Plaintiff was again examined at the UMMS Neurology Clinic on March 5, 2002. According to the neurologist's notations, Plaintiff indicated that he felt better and that his difficulty ambulating was not as severe as it had been previously. *Id*. The neurologist concluded that ADEM remained the most likely diagnosis. *Id*.

In October of 2003, Plaintiff was transferred to ECI. Paper No. 11, Ex. B at 7. On February 14, 2004, Dr. Eniola examined Plaintiff for his complaint of gait disturbance. Dr. Eniola noted that Plaintiff offered no complaints of any genitourinary symptoms or dizziness at that time. Paper No. 11, Ex. A. Dr. Eniola, however, referred Plaintiff to the UMMS Neurology Clinic for further consultation. *Id*.

Plaintiff was evaluated in the UMMS Neurology Clinic by Dr. Hardy on April 6, 2004. Plaintiff told Dr. Hardy that he believed his prior MRI indicated that he had MS. *Id*. He further informed Dr. Hardy that he had never seen a neurologist or received medication for his problem. Paper No. 11, Exs. A & B. Dr. Hardy believed Plaintiff's examination was consistent with MS and recommended further testing. Paper Nos. 11 & 23, Exs. A & B. Upon receipt of Dr. Hardy's consultation notes, Dr. Eniola contacted the neurologist and faxed him Plaintiff's prior neurology

---

[4] Dr. Eniola suggests that the results reinforced the likelihood that Plaintiff's diagnosis was not MS, because MS usually responds well to steroidal medication. Paper No. 11, Ex. A.

consultations and MRI results. Paper Nos. 11 & 23, Exs. A & B. According to Dr. Eniola, Dr. Hardy modified his position based upon his review of the prior medical records to conclude that there was a possibility that Plaintiff was embellishing his symptoms and there was no need for treatment or further work-up. *Id.* Dr. Eniola states that he explained this to Plaintiff. Paper No. 11, Ex. A.

Defendant Eniola asserts that since July 1, 2005, Dr. Jalali has monitored the evaluations and care provided to Plaintiff by ECI nurses and physician assistants. Paper Nos. 11, Ex. A; Paper No. 23, Ex. A. In September of 2005, Dr. Eniola admitted Plaintiff to the ECI Infirmary for observation for an unsteady gait. *Id.* The neurological examination was unchanged from previous examinations. *Id.* Nonetheless, as Plaintiff's gait remained unsteady, on September 26, 2005, Dr. Jalali ordered another neurology consult at UMMS. *Id.*

On November 4, 2005, Plaintiff was admitted to UMMS for evaluation. Paper No. 23, Ex. A. A repeat MRI was done and showed multiple peri-ventricular white matter lesions of Plaintiff's brain, consistent with MS. *Id.*, Exs. A & B. Plaintiff was diagnosed as having primary progressive MS with atypical features. *Id*. The consultants at UMMS recommended frequent re-evaluations, the use of a rolling walker, a soft mechanical diet, and the continuation of Plaintiff's regular medications. *Id*.

Dr. Eniola opines that he was surprised by the diagnosis, considering that Plaintiff had been evaluated on previous occasions and had not been diagnosed as having MS. *Id*., Ex. A. Following the recommendations of UMMS physicians, Dr. Eniola ordered Plaintiff a soft mechanical diet because of his difficulties in swallowing and directed that he receive a follow-up in the clinic in a three month period. *Id.*, Exs. A & B. Per the recommendations of UMMS consultants, Plaintiff was

provided the use of a rolling walker, rather than a wheel chair, to keep him mobile as long as physically possible. Paper No. 23, Exs. A & B.

For his part, Plaintiff argues that the record shows that Dr. Eniola was deliberately indifferent to his medical needs. Paper No. 25. He asserts that a physician under contract by Prisoner Rights Information System of Md., Inc. ("PRISM") reviewed his medical record and indicated that MS was a "possibility." *Id.* Plaintiff further states that actions of Dr. Jalali, in "going up" against Dr. Eniola, show that there "was even a dispute between these two doctors...." *Id.*

The record shows that Plaintiff underwent MRI studies and was examined by neurologists at the WCH and UMMS Neurology Clinic in response to his subjective complaints and objective findings of an unsteady gait. These studies and consults, conducted prior to his transfer to ECI, were all inconclusive for MS and no recommendation for MS treatment was made. Further, Defendant correctly observes that prior to November, 2005, Plaintiff was diagnosed with ADEM, not MS, based upon multiple studies and consults. It was not until the MRI was conducted by UMMS personnel in late 2005 that Plaintiff was diagnosed with progressive MS. He was then provided the appropriate diet, mobility apparatus, and medication per the recommendations of UMMS staff. The Complaint at best sets out a claim of misdiagnosis, which is not colorable in the context of a civil rights action. Dr. Eniola cannot be found to be deliberately indifferent to a known serious condition, because there were no objective findings or diagnoses of MS prior to November of 2005. Further, upon receipt of the MS diagnosis Dr. Eniola followed all recommendations made by UMMS consultants. The undersigned therefore finds that Plaintiff's medical treatment under Dr. Eniola's care was constitutionally adequate.

III. *Conclusion*

For the aforementioned reasons, Defendant's Renewed Motions for Summary Judgment are hereby granted. Judgment is entered in favor of Defendant and against Plaintiff. A separate Order follows.

Date: June 28, 2006

/s/
Alexander Williams Jr.
United States District Judge